UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHELE HART,                            )
                                         )
              Plaintiff,                 )
                                         )        CIVIL ACTION NO.
VS.                                      )
                                         )        3:12-CV-0436-G
DALLAS COUNTY HOSPITAL                   )
DISTRICT d/b/a PARKLAND HEALTH           )
AND HOSPITAL SYSTEM,                     )
                                         )
              Defendant.                 )

## MEMORANDUM OPINION AND ORDER

Before the court are the plaintiff's motion for partial dismissal of all claims

except unlawful retaliation (docket entry 55), the defendant's motion for summary

judgment (docket entry 72), and the defendant's amended objections and motion to

strike plaintiff's summary judgment response evidence (docket entry 82).  For the

reasons stated below, the plaintiff's motion for partial dismissal and the defendant's

motion for summary judgment are granted.  The defendant's motion to strike is

denied as moot.

I. <u>BACKGROUND</u>

A. <u>Factual Background</u>

This is an employment discrimination suit for race and gender discrimination, and retaliation, under Title VII and the Texas Labor Code.  The plaintiff Michele Hart ("Hart"), a white female, was employed as a nurse educator in the psychiatric department of the defendant, Dallas County Hospital District d/b/a/ Parkland Health & Hospital System ("Parkland").  *See* Notice of Removal, Plaintiff's Original Petition ("Petition") at 3-4 (docket entry 1-4).  Hart was a part-time worker in this capacity from October 2007 to May 2011, when she began working full time.  *Id.*  She continued as a full-time nurse educator until September 23, 2011.  *See* Defendant's Brief in Support of its Motion for Summary Judgment ("Motion") at 9 ¶ 21 (docket entry 73); *see also* Appendix in Support of Defendant's Motion for Summary Judgment ("Defendant's App."), Declaration of Kurt Delabar ("Delabar Decl.") at 109-110 ¶ 4 (docket entry 74-3).  Hart was an employee of the Nurse Education Department at Parkland, reporting to supervisors within that department.  Motion at 4 ¶ 2.  Her responsibilities included providing educational support for the Psychiatric Emergency Department ("PED").  *Id.* ¶ 3.  This required her to work on occasion with the PED Unit Manager, Vernell Brown ("Brown"), an African-American male.  *Id.* ¶ 4.  Hart and Brown worked in different departments, and Brown had no supervisory control or authority over Hart.  *Id.* ¶ 5.

- 2 -

On June 16, 2011, Hart reported to her supervisor, Emilie Allen ("Allen"), her observation of what appeared to be an unsafe condition in the Psychiatric Emergency "Day Room" at Parkland. *Id.* ¶ 6. She observed that this Day Room was left unsupervised for approximately five minutes. *Id.* At Allen's direction, the following day Hart submitted a Patient Safety Net ("PSN") report of this incident to Parkland's internal safety controls. *See* Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response") at 4 (docket entry 76); *see also* Appendix to Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's App."), Affidavit of Michele Hart ("Hart Aff.") at 36 ¶ 5 (docket entry 77).

Shortly thereafter, Hart experienced what she considered to be threatening and intimidating behavior by Brown and the PED staff. In one incident, Hart encountered Brown, who told her "I don't do PSN's down here. It's not how I handle things. All I have to say to you is, well, good luck to you." *See* Motion at 5-6 ¶ 8; Defendant's App., Deposition of Michele Hart ("Hart Dep.") at 13 (docket entry 74-1). In another incident in July 2011, Brown approached Hart in an empty hallway and glared at her with his hands balled up in a fist, making Hart think Brown was going to strike her. *See* Response at 6; Plaintiff's App. at 16. Brown passed Hart and proceeded through a door she was standing near. Plaintiff's App. at 17. Hart was left in the hallway, shaking and crying, and, when she couldn't find a supervisor

to whom she could report the incident, she left work for the day.  *Id.* at 18.  On other occasions between Hart's filing of the PSN and her resignation in September, Brown would apparently "glare" at Hart when she was alone in the PED, making her feel threatened and intimidated.  *See* Motion at 6-7 ¶ 11; Response at 6.

Hart lodged several complaints about Brown's behavior with various individuals at Parkland.  She complained to her Director, Jackie Brock ("Brock"), about the July incident in the hallway.  *See* Response at 6.  She also complained about Brown's behavior to another one of her supervisors, Larae Huycke ("Huycke"), who informed Hart of her (Huycke's) filing of a similar complaint against Brown.  *Id.* at 5.  On August 25, 2011, Hart lodged a formal complaint with Kurt Delabar, the Director of Human Resources at Parkland.  *Id.* at 7.  After being informed that Brown would either be terminated or transferred by October, 2011, in early September Hart gave Parkland a two-week notice of her resignation.  *Id.*; *see also* Motion at 8-9 ¶¶ 19-21.

September 23, 2011 was Hart's last day working at Parkland.  Motion ¶ 21.  That day she submitted an exit survey and a complaint about race, sex, and age discrimination.  *Id.* ¶ 22.  On October 5, 2011, Hart filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging race, sex, and age discrimination, as well as retaliation for her filing of a PSN.  *Id.* ¶ 23.

B.  Procedural Background

On December 20, 2011, Hart filed a petition against Parkland in the 193rd

Judicial District Court of Dallas County, alleging race and gender discrimination and

retaliation in violation of Title VII and the Texas Commission on Human Rights Act

("TCHRA"), retaliation in violation of the Texas Whistleblower Act, and violation of

the Family Medical Leave Act ("FMLA").  *See* Notice of Removal, Petition at 3, 7-8.

Parkland removed the case to this court on February 10, 2012.  *See* Notice of

Removal (docket entry 1).  On November 20, 2012, Hart filed a motion for partial

dismissal of her claims, essentially abandoning all claims except for retaliation in

violation of Title VII and the TCHRA.  *See* Plaintiff's Motion for Partial Dismissal of

All Claims, Except Unlawful Retaliation (docket entry 55).  In its response, Parkland

indicated that it does not oppose the motion, as long as Hart's abandoned claims are

dismissed with prejudice.  *See* Defendant's Response to Motion for Dismissal of All

Claims Except Unlawful Retaliation ("Defendant's Response") at 2 (docket entry 57).

This motion remains pending.  Parkland filed the instant motion for summary

judgment on January 25, 2013.  *See* Motion.  The case is set for trial on the court's

May docket.  *See* Order Establishing Schedule and Certain Pretrial Requirements at 2

¶ 2 (docket entry 8).

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), (c)(1).[1]  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the

---

[1]     Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

- 6 -

material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## B.  Evidentiary Objections

In a motion to strike, Parkland raises several objections to the evidence Hart uses to support her summary judgment response. Parkland's objections are primarily to statements that it claims are lacking in foundation or that constitute hearsay under the Federal Rules of Evidence. *See* Defendant's Amended Objections and Motion to Strike Plaintiff's Summary Judgment Response Evidence ("Motion to Strike") at 3-10 (docket entry 82). Because the court did not find it necessary to rely on this evidence

in support of its decision, these objections are overruled and the motion to strike is

denied as moot.  See *Continental Casualty Company v. St. Paul Fire & Marine Insurance*

*Company*, 2006 WL 984690 at *1 n.6 (N.D. Tex. Apr. 14, 2006) (Fitzwater, J.)

(overruling as moot objections to evidence not relied on by the court in its summary

judgment decision).

> C.   Title VII and TCHRA Race and Sex Discrimination Claims, Texas
> Whistleblower Act Retaliation Claim, and FMLA Claim

Hart has moved to dismiss "all claims, save and except Plaintiff's claim for

unlawful retaliation."  Plaintiff's Motion for Partial Dismissal of All Claims, Except

Unlawful Retaliation at 1 (docket entry 55).  Though it was initially unclear which of

Hart's claims she meant to retain, her summary judgment response clarifies that she

wishes to retain only the Title VII and TCHRA retaliation claims.  *See* Plaintiff's

Response to Defendant's Motion for Summary Judgment at 2 ¶ 3 (docket entry 75).

Parkland notes that this motion is properly considered a motion for voluntary

dismissal under FED. R. CIV. P. 41(a)(2), because Rule 41(a)(1) requires that the

notice of dismissal either be entered before an answer was filed (here, Parkland filed

an answer in the state court on February 10, 2012) or that it be signed by all parties

who have appeared (here, Parkland's attorney or authorized representative did not

sign Hart's motion for partial dismissal).  Defendant's Response to Plaintiff's Motion

for Partial Dismissal ("Defendant's Response") at 1-2 (docket entry 57).  Under FED.

R. CIV. P. 41(a)(2), "an action may be dismissed at the plaintiff's request . . . on

terms that the court considers proper." Further, the court retains discretion under Rule 41(a)(2) to dismiss a plaintiff's claims with prejudice. See *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 320 (5th Cir. 2002).

Parkland has twice made clear that it does not oppose the court granting Hart's motion to voluntarily dismiss her claims, on the condition that the dismissal is with prejudice. *See* Defendant's Response at 2; Defendant's Motion for Summary Judgment at 2 ¶ 4 (docket entry 72). Hart has twice had an opportunity to respond to Parkland's request for this condition, but she has declined to do so on both occasions.[2] Parkland argues that it ought not to be required to face the possibility of relitigating the dismissed claims, particularly in light of the extensive discovery in this case, which included a number of contentious discovery disputes apparently instigated by Hart. *See* Defendant's Response at 2; *see also* various motions to compel (docket entries 9, 12, 30, 32, 37). Given Hart's failure to respond to Parkland's request for dismissal with prejudice, and given the volume of discovery Parkland faced in this case, the court considers it proper to grant Hart's motion on the condition requested by Parkland. Thus, Hart's Title VII and TCHRA race and sex discrimination claims, her claims for retaliation under the Texas Whistleblower Act, and her claim under the FMLA are all dismissed with prejudice.

---

[2]     Hart did not file a reply to Parkland's response to her motion for partial dismissal. Nor did she mention Parkland's request for a dismissal of her claims with prejudice in her summary judgment response.

D.  <u>Title VII and TCHRA Retaliation Claims</u>

Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  A charge of retaliation follows a burden-shifting analysis similar to the one employed in cases of race and gender discrimination.  See *Septimus v. University of Houston*, 399 F.3d 601, 610-11 (5th Cir. 2005).  To establish a *prima facie* case of unlawful retaliation under Title VII, Hart must demonstrate that (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between participation in the protected activity and the adverse employment action.  See *Baker v. American Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).

With regard to the first prong, "protected activity" includes both an employee's opposition to practices made unlawful by Title VII and an employee's participation in the investigation of practices made unlawful by Title VII.  See *Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 555 U.S. 271, 274 (2009).

There is no contention here that Hart participated in any investigation of unlawful employment practices.  Rather, Hart argues that her various complaints to supervisors and the Human Resources department about Brown constitute opposition to employment practices made unlawful by Title VII.  *See* Response at 13-14 ¶¶ 11-

12.   Parkland responds that nothing in the evidence to which Hart points indicates that her complaints exhibited opposition to practices that are unlawful under Title VII.   *See* Motion at 26-28; *see also* Defendant's Reply Brief in Support of its Motion for Summary Judgment ("Reply") at 1-3 (docket entry 78).

Parkland's position is undeniably correct with respect to the safety complaint Hart lodged in the PSN.   *See* Motion at 27; *see also* Petition at 5.   Title VII does not address safety conditions in hospitals.   Therefore, Hart's complaints in the PSN do not constitute "protected activity" for the purpose of her Title VII retaliation claim. See, *e.g.*, *Washington v. M. Hanna Construction Inc.*, 299 Fed. Appx. 399, 401 (5th Cir. 2008) (complaint about OSHA violation is not a protected activity).

In addition, the various complaints Hart made about Brown's intimidating behavior do not rise to the level of "protected activity" for Title VII purposes.   Hart references the following complaints in her summary judgment response.   First, she refers to a complaint to Huycke about Brown's intimidating behavior.   *See* Response at 5.   In her deposition testimony, Hart states, "I told her [Huycke] I was -- feared for my safety, that he was becoming more violent.   I explained there was a difference between verbal harassment and physical harassment."   *See* Plaintiff's App. at 6, Hart Dep. 31:15-21.   The second complaint Hart references in her summary judgment response is a complaint to Brock.   Response at 6.   In this complaint, Hart stated in deposition testimony, she told Brock, "There was an incident yesterday with Vernell

[Brown] . . .  This has escalated to a whole new level.  I said, 'He made a move which I felt he was -- it was physically intimidating.  I felt he was about to hit me.'  I said, 'I don't feel safe here.'"  Plaintiff's App. at 18, Hart Dep. 128:12-16.  The third and final complaint to which Hart points in her summary judgment response is the formal complaint she lodged with Kurt Delabar and Human Resources.  Response at 7.  About this complaint, Hart gave no specific information in deposition, other than that it was a written complaint.  Plaintiff's App. at 27, Hart Dep. 234:2-13.

Title VII does not outlaw generic instances of "intimidation" or "harassment" in the workplace that are disconnected from discrimination based on "race, color, religion, sex, or national origin."  *See* 42 U.S.C. 2000e-2(a).  Rather, to be covered by Title VII, the intimidation or harassment in question must have some connection to discrimination, which is, after all, what Title VII exists to remedy.  See, *e.g.*, *Crawford*, 555 U.S. at 273 ("Title VII . . . forbids retaliation by employers against employees who report workplace race or gender discrimination.").

The evidentiary record of Hart's complaints that she relies on to support her summary judgment response contains no mention of race or gender (or any other kind of) discrimination,[3] nor would Parkland be on notice from such complaints that

---

[3]     For purposes of her retaliation claim, the complaints Hart lodged during her exit interview, which Parkland admits contain references to race and gender discrimination, *see* Motion at 9, are immaterial, as there could be no causal connection between such complaints and Hart's prior resignation (or, as she labels it, her "constructive termination," *see* Response at 17).

Hart was asserting, protecting, or otherwise exercising her rights (or the rights of others) under Title VII.[4]  Therefore, Hart's generic complaints about Brown's intimidating or harassing behavior also do not constitute "protected activity" for the purpose of her retaliation claim.

Because Hart failed to raise a genuine issue of material fact that she engaged in protected activity under Title VII, her retaliation claim fails.  Parkland is thus entitled to summary judgment on this claim.

### III.  CONCLUSION

For the reasons stated above, the plaintiff's motion for partial dismissal of all her claims and the defendant's motion for summary judgment are **GRANTED**.  The defendant's motion to strike is **DENIED** as moot.

Judgment will be entered for the defendant.

**SO ORDERED**.

March 13, 2013.

_A. Joe Fish_
_____
**A. JOE FISH**
**Senior United States District Judge**

---

[4]     The dearth of evidence of notice to Parkland that Hart experienced any discrimination (as opposed to generic intimidation or harassment) removes any possibility that Hart can raise a genuine issue of material fact that there was a causal connection between "engagement in protected activity" and an "adverse employment action" (here, Hart's resignation or "constructive termination," if that is the proper label), which is another reason her retaliation claim must fail.

- 13 -